**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**IDEARC MEDIA LLC.,**

    **Plaintiff,**

**v.**                                                          **Case No.: 8:09-CV-02078-T-17AEP**

**KRAVITZ LAW GROUP, P.A.,**

    **Defendant.**

                                    /

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Defendant's Motion to Set Aside Clerk's Default. (Dkt. No. 11.) Plaintiff filed a Response in opposition. (Dkt. No. 12.) A hearing on the Motion was held on May 5, 2010. The Court has carefully reviewed the Motion, the Response, and is otherwise fully advised in the premises. For the reasons stated below the Court recommends that the Motion to Set Aside Clerk's Default be **GRANTED**.[1]

    **I.**    *Factual Background*

On October 13, 2009, Plaintiff, Idearc, Inc. ("Idearc"), filed a Complaint (Dkt. No. 1) against Defendant Kravitz Law Group, P.A. ("Kravitz"), alleging breach of contract, quantum meruit, open account, and account stated based on its contract with Kravitz for its directory advertising services in telephone books and online. On November 19, 2009, Idearc filed a Motion for Default (Dkt. No. 6) against Kravitz. The Clerk entered a default (Dkt. No. 7) against Kravitz on November 20, 2009.

---

[1] The Motion to Set Aside Clerk's Default (Dkt. No. 11) was referred to the undersigned by the Honorable Elizabeth A. Kovachevich (Dkt. No. 15).

Three and a half months later, Kravitz filed its Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 10) on March 1, 2010, alleging fraud in the inducement, negligent misrepresentation, conversion, and unjust enrichment. On March 17, 2010, Kravitz filed the instant Motion to Set Aside Clerk's Default (Dkt. No. 11).

By its Motion, Kravitz admits that it was served with the Complaint on October 27, 2009, and that a responsive pleading was due on November 16, 2009. (Dkt. No. 11 at 1.) Kravitz also admits that it received Idearc's Motion for Default on November 23, 2009. (*Id.*) However, Kravitz alleges that it was unaware that a Clerk's default had been entered against it. (*Id.* at 2.) Additionally, Kravitz alleges that it was involved in settlement discussions with Idearc and that the parties had agreed to extend the deadline for Kravitz to file a responsive pleading until February 28, 2010. When the settlement discussions broke down, Kravitz retained counsel and began to prepare a responsive pleading when it was discovered that a Clerk's default had been entered. (*Id.*) Kravitz then contacted Idearc's counsel who allegedly agreed to allow Kravitz to file a responsive pleading but did not agree to stipulate to vacating the default. (*Id.*)

Kravitz argues that it had no knowledge that a default had been entered in the case, although it admits it may have been negligent in keeping abreast of the case's status. (*Id.* at 4.) Additionally, Kravitz asserts that Idearc would not be prejudiced by the Court vacating the Clerk's default. (*Id.*) Kravitz further contends that this case should be decided on its merits and that it has submitted numerous valid defenses in its Answer. (*Id.*) Finally, Kravitz argues that it acted promptly once it learned of the Clerk's entry of default. (*Id.* at 5.)

Idearc's Response sharply conflicts with Kravitz's version of events. Specifically, Idearc alleges that its counsel advised Kravitz on November 25, 2009, that the default had already been entered. (Dkt. No. 12 at 2.) Idearc's counsel admits that he offered to postpone the filing of a Motion for Final Default Judgment while the parties engaged in settlement negotiations, but Idearc's counsel denies that it agreed to extend the deadline for Kravitz to file a responsive pleading until February 28, 2010. (*Id.* at 2-3.) Idearc further states that settlement negotiations broke down by February 11, 2010, and Idearc intended to file a Motion for Final Default Judgment before Kravitz advised Idearc that it intended to file its Answer. (*Id.* at 3.)

During the hearing held on May 5, 2010, Kravitz's counsel stated that Kravitz intended to contact Idearc's counsel when it was served with the Complaint, but failed to do so until it received the Motion for Entry of Clerk's Default. Kravitz's counsel maintained that after Kravitz's conversation with Idearc's counsel on November 25, 2009, Kravitz believed he did not need to do anything while the parties were in settlement negotiations and that no default would be entered by the Court. Kravitz's counsel acknowledged that Kravitz made a mistake and wrongly assumed that the Court would not take action despite the filing of the Motion for Entry of Clerk's Default by Idearc. In response, Idearc's counsel maintained that he informed Kravitz of the entry of the Clerk's default and that he only agreed not to file a motion for default judgment while settlement negotiations continued.

Kravitz's counsel also argued that certain e-mail communications implied that Kravitz had a reasonable basis to believe a default had not yet been entered. (*See* Dkt. No. 22 at 11.) Additionally, Kravitz's counsel pointed out that Idearc's counsel agreed to allow Kravitz file

3

an Answer. Idearc's counsel acknowledged that he agreed to let Kravitz to file an Answer, and he agreed to withhold filing for a default judgment, but he stated that he could not stipulate to vacating the default. Idearc's counsel candidly admitted that at that time he was willing to go forward with the litigation, but that Idearc changed its position based on the defenses and counterclaims alleged in the Answer.

## II. *Applicable Legal Standards*

Federal Rule of Civil Procedure 55(a) provides that the clerk shall enter a party's default if the party fails to plead or otherwise defend an action brought against it, and this "failure is shown by affidavit or otherwise." Under Rule 55(b), a default judgment may be entered by the court or the clerk if certain requirements are met. Pursuant to Rule 55(c), a court may set aside an entry of default for good cause shown, while a default judgment may be set aside in accordance with Rule 60(b). Rule 60(b) allows the court to set aside a final judgment for excusable neglect, among other reasons. "The importance of distinguishing between an entry of default and a default judgment lies in the standard to be applied in determining whether or not to set aside the default. The excusable neglect standard that courts apply in setting aside a default judgment is more rigorous than the good cause standard that is utilized in setting aside an entry of default." *E.E.O.C. v. Mike Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (citations omitted).

In this case, only an entry of default was made by the clerk and therefore Rule 60(b) (and the more rigorous excusable neglect standard) is not applicable. Thus, the Court need only determine whether good cause has been shown to set aside the entry of default. "Good cause is a mutable standard, varying from situation to situation. It is also a liberal one–but

4

not so elastic as to be devoid of substance." *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (*quoting Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). In determining whether to set aside a clerk's entry of default for good cause, courts consider factors such as: (1) whether the default was culpable or willful; (2) whether setting the default aside would prejudice the adversary; (3) whether the defaulting party presents a meritorious defense; (4) whether the public interest was implicated; (5) whether there was significant financial loss to the defaulting party; and (6) whether the defaulting party acted promptly to correct the default. *Id.* If a party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief. *Id.* at 951-52 (*citing Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194-95 (6th Cir. 1986)).

**III.** *Discussion and Analysis*

The Court finds, based upon all the circumstances, that good cause has been shown to set aside the Clerk's Entry of Default. Kravitz surely made mistakes in handling its case by not filing a timely responsive pleading when it was served with the Complaint, and by mistakenly believing that the Court would not act on Idearc's Motion for Entry of Clerk's Default. These mistakes are somewhat surprising given that Defendant is a law firm, and its lawyers would presumably have knowledge of the Federal Rules of Civil Procedure. However, there is a strong policy of determining cases on their merits and therefore courts view defaults with disfavor. *See In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Leaderstat, LLC v. Abisellan*, 252 F.R.D. 698, 700 (M.D. Fla. 2007) ("Where there are no intervening equities, any doubt should, as a general proposition, be

resolved in favor of the movant to the end of securing a trial upon the merits.") (*quoting Davis v. Parkhill-Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962)).[2]

The Court does not believe that Kravitz's conduct was willful or culpable. It does not appear that Kravitz failed to file an Answer in a timely manner because it was intent on thwarting the judicial process or was recklessly disregarding the effect of its conduct on others. *See Shepard Claims*, 796 F.2d at 194. The Court does find it more plausible that during the conversation between Kravitz and Idearc's counsel on November 25, 2009, Idearc's counsel informed Kravitz that the Court had entered a default. However, it appears that Kravitz misunderstood that communication and did not fully appreciate the consequences of not responding to Idearc's Motion for Entry of Clerk's Default. Even charging Kravitz with the knowledge that a default had been entered against it, the parties' actions after November 25, 2009, indicate there was an implicit agreement between the parties that they intended to proceed with the litigation in the event they could not arrive at a settlement. For example, Idearc acknowledged in its Response that it agreed to postpone filing a motion for final default judgment while the parties were engaged in settlement negotiations (Dkt. No. 12 at 2). Communications from Kravitz to Idearc's counsel further suggest that extensions of time for filing an Answer were at least being contemplated by the parties. (Dkt. No. 22 at 7-8.) Moreover, at the hearing Idearc's counsel indicated that he later agreed to allow Kravitz to file an Answer, although he apparently could not stipulate to vacating the Clerk's default.

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

Idearc's counsel further confirmed at the hearing that he allowed Kravitz to file the Answer without objection because Idearc was willing to go forward with the lawsuit. And Idearc's counsel candidly admitted that Idearc changed its position and decided to oppose Kravitz's attempt to set aside the Clerk's default only after Idearc became aware of the defenses and counterclaims raised in the Answer. Thus, the Court finds that notwithstanding the conversation regarding the default on November 25, 2009, the parties were thereafter actively engaged in settlement negotiations for several months. Additionally, it appears that there was an implicit agreement between the parties that the litigation would proceed if the settlement negotiations broke down. Kravitz's actions of not filing a responsive pleading in the first instance, or a response to Idearc's Motion for Entry of Clerk's Default, are questionable at best. However, the Court finds that Kravitz's inaction was not willful or culpable, and that the other factors regarding good cause, as discussed below, favor setting aside the Clerk's default.

With respect to the other factors regarding good cause, the Court finds that setting the default would not materially prejudice Idearc. While Kravitz filed its Answer over three months past the deadline, during that time the parties were actively negotiating for a settlement. Additionally, it appears from the record that Idearc intended to proceed with the litigation if those discussions broke down. Finally, there is no showing by Idearc that the delay by Kravitz has resulted in a loss of evidence, increased opportunities for fraud, or discovery difficulties. *See Suntrust Bank v. Armsey*, No. 09-80606-CIV, 2010 WL 731802, at *2 (S.D. Fla. Feb. 26, 2010) (*quoting Burrell v. Henderson*, 434 F.3d 826, 835 (6th

Cir.2006)). Therefore, the Court finds that allowing this litigation to proceed would not materially prejudice Idearc.

Next, the Court finds that Kravitz has arguably plead meritorious defenses in its Answer. For example, Kravitz alleged that Idearc misrepresented where Kravitz's advertisements would be placed in Idearc's Yellow Page Directories, and failed to utilize reasonable efforts for the distribution of its Yellow Page Directories. (Dkt. No. 10 at 2-4.) While Idearc suggests that many of Kravitz's defenses and counterclaims are barred due to Idearc's bankruptcy proceedings, with respect to a meritorious defense, likelihood of success is not the measure. *Suntrust Bank*, 2010 WL 731802, at *2 (*quoting Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980). Instead, the movant need only provide "a hint of a suggestion" that his case has merit. *Id.* (*citing Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969). Here, Kravitz has arguably raised legally sufficient affirmative defenses. Indeed, Idearc's argument that Kravitz presents no meritorious defenses is somewhat contrary to Idearc's admission that the defenses and counterclaims in the Answer were the basis for it not stipulating to vacating the Clerk's default. In any event, the Court's review at this juncture is limited to an inquiry of whether Kravitz's allegations are entirely devoid of merit, and Idearc's arguments are better left for a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Suntrust Bank*, 2010 WL 731802, at *2. Therefore, the Court concludes that at this time Kravitz has raised a meritorious defense, and this factor also favors setting aside the default.

Finally, because the Court finds that there was an implicit agreement between the parties that the litigation would continue if settlement negotiations broke down, the Court

finds that Kravitz acted promptly in seeking to have the default vacated once negotiations broke down in February 2010. Kravitz acted promptly by immediately hiring counsel, who soon after filed an answer and motion to set aside the Clerk's default. Kravitz's counsel consulted with Idearc's counsel and obtained permission to file an answer without objection. Kravitz's counsel explained during the hearing that she believed she did not have to file a motion to set aside the Clerk's default when she filed the Answer because Idearc indicated to her that it was not going to oppose the filing of the Answer. When she became aware that a motion was required and that Idearc would not stipulate to vacating the default, she promptly filed the instant Motion. Thus, to the extent that Kravitz's delay between November and February was due to the parties' implicit agreement to postpone the litigation, the Court finds this factor also favors setting aside the default because Kravitz acted promptly after settlement negotiations failed.

### IV. *Conclusion*

Although its actions were questionable, Kravitz did not act willfully or with reckless disregard for the judicial process. Instead, the parties engaged in settlement negotiations for about three months before Kravitz concluded that the matter was not going to be resolved. The Court finds that there was an implicit agreement between Idearc and Kravitz that the lawsuit would proceed if negotiations failed, and therefore Idearc would not be prejudiced by vacating the Clerk's default. Additionally, it appears Kravitz has raised meritorious defenses, and it acted promptly once settlement negotiations broke down. Because the Court favors allowing cases to be decided on their merits rather than on a technical or procedural basis, and

9

because the totality of the circumstances favors a finding of good cause, the undersigned recommends that Kravitz's Motion to Set Aside Clerk's Default (Dkt. No. 11.) be granted.

Accordingly, upon consideration, it is **RECOMMENDED**:

(1) Defendant's Motion to Set Aside Clerk's Default (Dkt. No. 11) be **GRANTED**; and

(2) Defendant's Answer, Affirmative Defenses, and Counterclaims (Dkt. No. 10) be

**DEEMED TIMELY FILED**.

**It is so Reported** at Tampa, Florida, this 7th day of May, 2010.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*

Copies furnished to:

Hon. Elizabeth A. Kovachevich

Counsel of Record